IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-1568-RBJ

EAGLE VALLEY CLEAN ENERGY, LLC, a Utah limited liability company,

      Plaintiff,

v.

WELLONS, INC., an Oregon corporation,
WELLONS GROUP, INC., a Washington corporation,
MARTIN NYE, an individual, and
JASON JONER, an individual,

      Defendants.

---

ORDER

---

      There are two motions to dismiss before the Court. The first is by defendants under Fed. R. Civ. P. 12(b)(6) to dismiss all four of plaintiff's claims. ECF No. 20. The second motion to dismiss is by plaintiff under Fed. R. Civ. P. 41(a)(2) to dismiss its claims for tortious interference with contract (second and third causes of action) and interference with performance of contract (fourth cause of action) without prejudice. ECF No. 25. The first motion to dismiss has been fully briefed, but the second motion to dismiss has not. For the reasons explained in this order I GRANT defendants' motion to dismiss, ECF No. 20, and find that plaintiff's motion to dismiss, ECF No. 25, is now MOOT.

1

# I. BACKGROUND

In August 2016, plaintiff Eagle Valley Clean Energy, LLC, ("Eagle Valley") entered into

a Noncompetition Agreement with, among other parties, defendants Wellons, Inc. ("Wellons"),

Wellons Group, Inc., Martin Nye and Jason Joner. Compl., ECF No. 1 at ¶8. The parties

executed this Noncompetition Agreement to resolve a discovery dispute in a lawsuit between

Wellons and Eagle Valley, No. 15-CV-01252-RBJ. In this discovery dispute, Wellons sought

records from Holy Cross Energy, a company that purchased electricity produced at Eagle

Valley's biomass facility, to evaluate Eagle Valley's lost profit claims. ECF No. 20, Ex 1 at ¶A.[1]

Eagle Valley objected to Wellons's discovery of these records, claiming it contained confidential

business and trade secret information. *Id.* at ¶B. To resolve this dispute, plaintiff and defendants

executed a Protective Order governing access to confidential information and a Noncompetition

Agreement. ECF No.1 at ¶17; ECF No. 20, Ex. 1 at ¶D.

The purpose of the Noncompetition Agreement was to "enabl[e] Wellons to obtain and

utilize the Holy Cross Energy records for the sole purpose of the Litigation, while protecting

Eagle Valley's competitive interests as set forth herein," by having defendants agree "not to

compete, or prepare to compete, with Eagle Valley within the States of Colorado and Wyoming

for a three-year period." ECF No. 20, Ex. 1 at ¶D. More specifically, this agreement restricted

---

[1] Plaintiff does not attach this Noncompetition Agreement to its Complaint. Instead, defendants submit it as an exhibit to their motion to dismiss. I can properly review this document at the motion to dismiss stage because it is referred to in the Complaint, it is central to the plaintiff's claim and its authenticity is not disputed. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2016).

defendants from owning, operating, financing or developing "a biomass facility" in this territory. *Id.* at ¶1.

This case had a nine-day jury trial before this Court in May and June 2017, and a $10,840,000 judgment was rendered against Eagle Valley. *See Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, No. 15-CV-01252-RBJ, ECF Nos. 368, 369; *Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, 2017 WL 4337856 (D. Colo. Sept. 29, 2017) (denying motion for a new trial). However, litigation has continued over Wellons's efforts to collect on this judgment. *See Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, No. 15-CV-01252-RBJ, ECF Nos. 426-540. On June 21, 2018 Eagle Valley filed the present lawsuit bringing four claims against defendants for improper actions they allegedly took in seeking to recover on this judgment. Eagle Valley alleges (1) breach of the Noncompetition Agreement by all defendants; (2) tortious interference with Eagle Valley's contract with the Rural Utilities Service ("RUS"); (3) tortious interference with Eagle Valley's contract with Holy Cross Energy ("HCE"); and (4) interference with performance of the RUS and HCE contracts. *See generally* Compl., ECF No. 1. Eagle Valley asks for general, compensatory and consequential damages as well as attorney fees and costs. *Id.*

In August 2018 defendants filed a motion to dismiss, ECF No. 20, plaintiff filed a response, ECF No. 21, and this motion became ripe upon defendants' filing of a reply, ECF No. 22. On January 27, 2019 plaintiff filed a motion to dismiss claims two, three and four without prejudice. ECF No. 25. This motion has not yet been fully briefed. However, I will discuss the content of this motion for context.

In plaintiff's motion to dismiss its claims without prejudice, plaintiff calls the Court's attention to two lawsuits currently pending in the Third Judicial District of Utah: *Wellons, Inc. v.*

*Eagle Valley Clean Energy, LLC et al*, case no. 180901367, and *Wellons, Inc. v. Eagle Valley*

*Clean Energy, LLC et al.*, case no. 186900456. These two cases also concern Wellons's efforts

to collect on the judgment rendered against Eagle Valley in a jury trial before this Court. *See*

*Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, No. 15-CV-01252-RBJ. In the first Utah

action, Wellons alleges that Eagle-Valley has made post-judgment fraudulent transfers, and

discovery is currently ongoing. ECF No. 25 at 3. Eagle Valley asserts counterclaims in this

action that are similar to claims two, three and four raised in the complaint before this court. In

the second Utah action, the court granted Wellons a charging order against Eagle Valley, and

Wellons has issued writs of execution to execute on debts owed to Eagle Valley. ECF No. 25 at

3-4. Because Eagle Valley prefers to litigate its claims of tortious interference with contract in

these two Utah cases, they ask that I dismiss these claims without prejudice here. However,

Eagle Valley wishes to continue with its breach of contract claim against Wellons in the lawsuit

now before the Court. Defendants do not stipulate to an order dismissing claims two, three and

four without prejudice, presumably (as briefing on this issue has not yet occurred), because they

think that these claims should be dismissed with prejudice. Based on the parties' briefings for

defendants' motion to dismiss, ECF Nos. 20, 21, 22, I find that claim one and four should be

dismissed with prejudice and that claims two and three should be dismissed without prejudice.

Therefore, plaintiff's motion to dismiss claims two, three, and four without prejudice is now

moot.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to

state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493

F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. ANALYSIS

**1) Claim One: Breach of Contract.**

Plaintiff alleges that defendants breached the Noncompetition Agreement by approaching the Rural Utilities Service ("RUS"), Holy Cross Energy ("HCE"), the United States Forest Service and Eagle Valley's fuel suppliers "concerning matters in preparation or furtherance of their desire to own, operate or finance the Eagle Valley plant." ECF No. 1 at ¶22. Defendants argue that plaintiff fails to state a breach of contract claim because the Noncompetition Agreement bars defendants from competing with Eagle Valley in owning, operating or developing a different biomass facility in the restricted territory, but that it does not encompass a situation in which defendants obtain ownership of Eagle Valley's own biomass facility. I agree.

This agreement has a choice of law provision that specifies that the interpretation of this agreement will be governed by Colorado state law. ECF No. 20-1 ¶5. Contract interpretation is a question of law. *Ad Two, Inc. v. City & Cty of Denver*, 9 P.3d 373, 376 (Colo. 2000). "The

primary goal of contract interpretation is to give effect to the intent of the parties." *Id.* (citing

*USI Props. East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)). A court determines the intent

of the contracting parties "according to the plain language and meaning of the contract."

*Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. App. 2008).

Eagle Valley alleges that defendants are attempting to obtain ownership of its biomass

facility to satisfy the judgment against it. ECF No. 21 at 2. Eagle Valley argues that the

Noncompetition Agreement prevents defendants from owning "a biomass facility" in Colorado

and Wyoming, and literally speaking, Eagle Valley's biomass facility is "a biomass facility" in

this restricted territory. However, in interpreting a contract, courts do not construe words or

phrases in isolation. Doing so would permit an attorney's linguistic sleight of hand to replace the

intent of the contracting parties. Instead "courts should give effect to the general purposes of a

contract." *Ad Two, Inc.*, 9 P.3d at 377. Here, the stated purpose of the Noncompetition

Agreement was to prevent defendants from using trade secrets or confidential information that it

obtained in discovery to own, operate or finance a biomass facility that could compete with

Eagle Valley's biomass facility.

Plaintiffs argue that if "a biomass facility" was intended to mean a biomass facility, but

not Eagle Valley's own biomass facility, the parties could have included such limiting language

in the contract. ECF No. 21 at 9. The Colorado Supreme Court has held that "we should not

allow a hyper-technical reading of the language in a contract to defeat the intentions of the

parties." *Ad Two, Inc.*, 9 P.3d at 377. "Courts make due allowance for a common human failing,

that of being careless in choosing words. We should not allow inept expressions to defeat the

evident intentions of the parties." *Id.* (citing *Hutchinson v. Elder*, 344 P.2d 1090, 1092 (Colo.

1959)). In business, one cannot compete with oneself. *See, e.g.*, COMPETITION, Black's Law Dictionary, (10th ed. 2014) ("the effort or action of *two or more* commercial interests to obtain the same business from third parties.") (emphasis added). It should be unnecessary for the parties to include such axiomatic concepts in a noncompetition agreement to prevent the interpretation that plaintiff endorses.

"Moreover, a contract should never be interpreted to yield an absurd result." *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001), *abrogated on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo. 2007). This noncompetition agreement on its face prohibits a broad range of activities with biomass facilities in the restricted territory. Defendants cannot "in any manner whatsoever, directly or indirectly, own or operate, finance or participate in the financing of, develop or co-develop, or assist or consult with any third party in connection with any effort to own, develop or finance a biomass facility in the States of Colorado and Wyoming (the 'Territory')." I agree with defendants that an interpretation that would have prevented defendants from investing in or financing Eagle Valley's own biomass facility is an absurd result in light of the purpose of the <u>Noncompetition</u> Agreement, that is to restrict defendants from competing with Eagle Valley's biomass facility. There is no indication in the Noncompetition Agreement that the parties entered into this contract intending to prevent defendants from investing in, becoming owners of, financing, or otherwise assisting or consulting in efforts to develop Eagle Valley's biomass facility. These cooperative activities that would support Eagle Valley's biomass facility are the opposite of competitive activities that the entire agreement is aimed at preventing.

7

Lastly, plaintiff argues that because the Court must resolve all ambiguities in a contract in plaintiff's favor at the motion to dismiss stage, defendants' motion cannot be granted. They argue that at most the Noncompetition Agreement is ambiguous as to whether it includes Eagle Valley's biomass facility or not. I disagree. I find that the contracting parties unambiguously did not intend to include Eagle Valley's biomass facility as "a biomass facility" prohibited from competing with Eagle Valley's biomass facility. Because Eagle Valley does not allege facts to support its claim that defendants have breached the Noncompetition Agreement as a matter of law, I dismiss this first claim with prejudice.

**2) Claims Two, Three, and Four: Intentional Interference with Contract.**

Claims two through four concern Eagle Valley's contracts with the RUS and HCE. Claims two and three are for tortious interference with these contracts while claim four is for "interference with performance of contract." Neither the Complaint nor plaintiff's response brief explain how claim four is different than claims two and three. Thus, I will analyze all three claims under the legal standard for the tort of intentional interference with contract.

To state a claim for intentional interference with contract, plaintiff must allege for each defendant that (1) plaintiff had a contract with a third party (here, RUS or HCE); (2) defendant knew or reasonably should have known of the contract; (3) defendant by words, conduct, or both, intentionally caused the third party to not to perform or terminate its contract with the plaintiff, or each defendant interfered with the third party's performance of the contract, thereby causing the third party to not perform or terminate the contract; (4) defendant's interference with the contract was improper; and (5) defendant's interference with the contract caused the plaintiff damages. Colo. Jury Instr., Civil 24:1; *see also Warne v. Hall*, 373 P.3d 588, 595 (Colo. 2016)

("A plaintiff cannot be entitled to relief on a claim of intentional interference with contract unless he alleges and proves that the defendant intentionally and improperly induced a party to breach the contract or improperly made it impossible for a party to perform.").

Plaintiff alleges that valid contracts exist between Eagle Valley and RUS and between Eagle Valley and HCE, satisfying the first element. *See* ECF No. 1 at ¶¶ 34, 39. Because plaintiff alleges that the defendants have communicated with HCE and RUS in an effort to own Eagle Valley's biomass facility, *Id.* at ¶31, I can plausibly infer that defendants knew or reasonably should have known about these contracts. However, plaintiff fails at the third element of this tort. Plaintiff does not allege that RUS or HCE breached their contracts with Eagle Valley. They only allege "upon information and belief" that defendants are "encouraging RUS to breach its obligations to Eagle Valley," *Id.* at ¶36, and "encouraging HCE to breach its obligations to Eagle Valley," *Id.* at ¶41. Under Colorado law, a plaintiff cannot recover for a tortious interference with contract where there has not been a breach of the contract. *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.,* 577 P.2d 748, 751 (Colo. 1978).

In its response brief, Eagle Valley concedes that breach is a necessary element of tortious interference with contract, but argues that it does not need to allege a breach of contract to obtain injunctive relief against Wellons. However, in its complaint, Eagle Valley does not ask for injunctive relief. Nor does it allege any facts that could support this Court's grant of injunctive relief, such as facts demonstrating a danger of irreparable injury, the absence of an adequate remedy at law, or that an injunction will not disserve the public interest.

Moreover, Eagle Valley's allegations to support the fourth element of tortious interference with contract, that defendant's interference with contract was improper, is

conclusory. For claims two, three and four, Eagle Valley alleges that "Defendants interfered with RUS and Eagle Valley's agreements with improper means and improper purpose," ECF No. 1 at ¶35; "Defendants interfered with HCE and Eagle Valley's agreements with improper means and improper purpose," *Id.* at ¶40; and "Defendants intentionally and improperly interfered with Eagle Valley's performance of the HCE, PPA, and its RUS Loan Agreements," *Id.* at ¶47. These conclusory allegations only repeat the legal standard. More specific allegations that defendants "disparaged" Eagle Valley or disclosed Eagle Valley's confidential information are pled only "on information and belief." *Id.* at ¶¶ 36, 41, 47. Eagle Valley further argues that defendants' actions are improper because they are in violation of the noncompetition agreement. However, in finding that the breach of contract claim fails, this argument also fails. Because Eagle Valley does not sufficiently allege two necessary elements of tortious interference with contract, claims two through four must be dismissed.

In its response brief, Eagle Valley asks the Court for leave to amend the Complaint to add allegations that support Eagle Valley's intentional interference claims. Fed. R. Civ. P. 15(a)(2) provides that leave to amend "shall be freely given when justice so requires. However, a court may refuse leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Tr. Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993)). Because plaintiff states that these additional factual allegations come from discovery in the Utah case, and because this case is in its early stages, I do not find circumstances of undue delay or undue prejudice to defendants here. Therefore, I dismiss claims two and three without prejudice. I do

not find that claim four states a cause of action that is distinct from claims two and three, and I dismiss claim four with prejudice.  Plaintiff's motion to dismiss claims two, three and four without prejudice, ECF No. 25, is now MOOT.

## ORDER

(1) Defendants' Motion to Dismiss, ECF No. 20, is GRANTED.  Claim One and Claim Four are DISMISSED WITH PREJUDICE.  Claims Two and Three are DISMISSED WITHOUT PREJUDICE

(2) Plaintiff's Motion to Dismiss, ECF No. 25, is MOOT.

(3) As the prevailing parties, defendants are awarded their reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  Final judgment will enter accordingly.

(4) The Court notes that in their motion to dismiss the defendants included one sentence in which they assert that the complaint was "baseless and vexatious on its face" and request an award of attorney's fees.  ECF No. 20 at 12.  This request was not briefed by either party.  If defendants are serious about seeking attorney's fees on that basis, they may file a motion to amend the judgment within 15 days and brief the issue, in which case the Court will consider it after full briefing is complete.  Otherwise, a final and appealable judgment will stand as here directed.

DATED this 4th day of February, 2019.

BY THE COURT:

Brooke Jackson

_____

11

R. Brooke Jackson
United States District Judge